IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MONIQUE A. COBBS<br>6086 Leafridge Lane<br>Columbus, Ohio 43232 | : :<br>: | CASE NO. 2:21CV4036<br><br>JUDGE Judge Sargus |
| Plaintiff, | : : | |
| v. | : : | MAGISTRATE JUDGE<br>MAGISTRATE JUDGE VASCURA |
| | : | **COMPLAINT** |
| PICKERINGTON LOCAL CITY SCHOOL<br>DISTRICT,<br>c/o Pickerington City School District Board<br>Members,<br>Clay Lopez, Keith Kristoff, Lori Sanders<br>Vanessa Niekamp, Cathy Olshefski, Ryan<br>Jenkins,<br>90 N. East Street<br>Pickerington, OH 43147 | : :<br>:<br>:<br>:<br>:<br>: | **JURY DEMAND ENDORSED HEREON** |
| CHRISTOPHER BRIGGS in his official<br>capacity as SUPERINTENDENT<br>Pickerington City Schools<br>90 N. East Street<br>Pickerington, OH 43147 | : : : : : : | |
| Defendants. | : | |

## I. Preliminary Statement

1. This action seeks economic, compensatory, and punitive damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Reconstruction Era Civil Rights Act, 42 U.S.C. §1981 committed when Defendants Pickerington City School District ("Pickerington" or "Defendants") terminated and did not renew the employment contract of Plaintiff Monique A. Cobbs ("Ms. Cobbs" or "Plaintiff"), an African-American female, for alleged performance deficiencies after she

1

complained of Defendants' discriminatory practices, while the employment contracts of similarly-situated Caucasian employees were renewed.

## II. Jurisdiction and Venue

2. This action brings a race discrimination claim under the Reconstruction Civil Rights Act, 42 U.S.C. §1981.

3. This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); and 1343 (civil rights).

4. Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202.

5. Compensatory and punitive damages may be awarded under 42 U.S.C. § 1981a.

6. Costs and attorneys' fees may be awarded pursuant to the 42 U.S.C. § 1988; and Fed. R. Civ. P. 54.

7. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because Defendants' worksite and location of the events in this action took place in Pickerington County, Ohio, within the Southern District of Ohio.

## III. Parties

8. Plaintiff Monique A. Cobbs is a 57-year old African-American female and resident of Franklin County Ohio, who was employed by Defendants for 14 years, from 2005 until her contract was not renewed, effective July 31, 2019.

9. Defendants Pickerington City Local School District, reached through its Board of Education members who are named only in their official capacity as the policymaking body of the Pickerington School District and sue-and-be-sued status under O.R.C. § 3301.11 *et seq.*, is a unit of local government established under the laws of the State of Ohio with the ultimate authority to

establish policies, practices, procedures, and customs for schools and employees within its jurisdiction.

10. Defendant Christopher Briggs, Superintendent for the Pickerington City Local School District, acted under color of state law at all times relevant to this action, and is being sued in his official capacity as Superintendent for the Pickerington City Local School District.

### IV. Facts

11. Plaintiff graduated from the Ohio State University in 1986 with a Bachelor of Science Degree in Comprehensive Social Studies and obtained a Master of Education in Educational Administration from the University of Dayton in 1991.

12. In 2005, Plaintiff began her employment with the Pickerington Local School District as Dean of Students at Pickerington central High School.

13. In 2005, Pickerington Central High School had approximately 1,800 students and Plaintiff's responsibilities as Dean of Students included assisting the Principal with all aspects of administration and instructional leadership.

14. Between 2010 and July 31, 2019, Plaintiff was an Assistant Principal at various Pickerington Local Schools; she worked under three different Principals at North High School, with the last being Principal Mark Ulbrich, who is a Caucasian male.

15. The demographics at Pickerington North High School have changed during the last decade from a nearly all Caucasian student body and staff to a racially diverse population of students; as a result, there are racial tensions between students, and between teachers, administrative staff, and students.

16. As the Assistant Principal, Plaintiff personally experienced racial discrimination, witnessed discrimination against students, and over a period of several years, beginning in 2015, she reported these incidents to Principal Ulbrich.

17. Some of these racial incidents, such as students dressed in Ku Klux Klan ("KKK") robes, were publicized.

18. Plaintiff witnessed black students being treated less favorably by teachers and the Administration than white students. Examples include, but are limited to, black students received disciplinary write ups at approximately twice the rate of white students; white teachers reported activity by black students perceived as "threatening", yet the same behavior was not considered "threatening" when exhibited by white students.

19. The disparate treatment of black students occurred multiple times and with multiple white teachers.

20. Some of the parents of the children who experienced the discriminatory treatment reported it to Principal Ulbrich, but he took no action to resolve this racial discrimination or to satisfactorily address their concerns.

21. In 2017 and 2018, black students and teachers at North High School were still experiencing discriminatory treatment based on race, and as Assistant Principal, Plaintiff received many complaints from students and teachers alike.

22. As an example, several students complained to Plaintiff that that Lauren Dorsey, a teacher who supervised the Drill team, regularly used the "N" word while discussing a drill team song with students, and Plaintiff followed protocol by reporting it to Principal Ulbrich.

4

23. Principal Ulbrich appeared to take the matter lightly and joked saying, "[W]e all know there is a difference between the hard 'r' and the soft 'a' at the end of N****r," or used words to that effect.

24. The correct procedures were not followed during an investigation of the incident and Plaintiff's authority and participation in the investigation were undermined.

25. Black students were referred to as "slave labor" by a teacher and racial slurs were used by teachers, which led to Plaintiff receiving complaints.

26. There were written threats left in school bathrooms on multiple occasions encouraging violence, which could be considered hate speech.

27. One sign read "Lynch all N*****s, Restore PNHS".

28. On a different occasion a sign was posted in the rest room that read "Kill all N*****s".

29. On another occasion, "Fucking hate N******s" was posted in the boys' bathroom.

30. Although Plaintiff reported these incidents and hate speech, initially, they were not reported to outside authorities, nor would Principal Mark Ulbrich and the Pickerington District Office notify parents, students, staff, or the public of these threats, even though Defendants routinely notified the community of lesser concerns, such as bed bugs.

31. Plaintiff continually asked her supervisor, Mark Ulbrich, to call the FBI and when he finally did, they came out immediately.

32. During the meeting with the FBI, Plaintiff supplied the agent with pictures and notes surrounding these incidents which had been occurring for over two years.

33. Principle Ulbrich and Defendants were displeased with Plaintiff and her complaints.

5

34. Although Plaintiff attempted to investigate, report, and correct the discriminatory treatment, appropriate action was not taken by Defendants to resolve the issues and proper procedures were not followed; the racial tensions and discriminatory environment continued.

35. On or around March 1, 2018, Plaintiff received a complaint from an African-American English teacher, Dennis Wade, who believed he was being discriminated against because of his race.

36. While other non-black students and staff were entering the building without being stopped or questioned, Mr. Wade was stopped from entering the building until he showed I.D., even though fellow teachers present at the time indicated he was a teacher.

37. Because Mr. Wade reported the incident to Plaintiff, she had an obligation to report it to Principal Ulbrich who was dismissive and didn't even bother to speak with Mr. Wade.

38. Plaintiff believes her willingness to speak out as an advocate against racial discrimination resulted in her being labeled as a "trouble-maker" and/or as a stereotypical "angry black woman."

39. In March of 2018, Principal Ulbrich placed Plaintiff on a Performance Improvement Plan ("PIP"), even though she had not experienced performance problems or received disciplinary write-ups in the more than 13 years that she had worked for Defendants.

40. Principal Ulbrich placed Plaintiff on a PIP, when nothing about her performance had changed from the years prior to placement on a PIP, and he had not indicated there was a problem with Plaintiff's performance prior to issuing a PIP.

41. Defendants were simply tired of dealing with Plaintiff's complaints about racial discrimination.

6

42. The PIP was a precursor to a materially adverse employment action, as it provided an excuse for Principal Ulbrich to begin the disciplinary process and lay the groundwork for the subsequent non-renewal of Plaintiff's contract.

43. In May of 2018, Principal Ulbrich recommended to Superintendent Christopher Briggs that Plaintiff's two-year contract not be renewed for the 2018-2019 school year, even though she had been receiving two-year contracts since 2005, with no evidence that non-renewal had ever been considered previously.

44. This recommendation was reversed, but Plaintiff's contract was renewed for only one-year, instead of the two year contracts she had received.

45. In August of 2018, Plaintiff was directed to serve as Assistant Principal at two junior high schools, Riverview and Lakeview, splitting her time between each school.

46. Plaintiff remained on the Performance Improvement Plan during this time.

47. On or around May 12, 2019, Plaintiff was notified that it was being recommended that her contract not be renewed at all for the 2019-2020 school year.

48. Plaintiff met with the Board of Education in Executive Session on May 22, 2019, to appeal the decision to non-renew her contract; Superintendent Christopher Briggs, Assistant Superintendent for Human Resources Zach Howard, and David J. Lampe were in attendance.

49. Defendants' decision to not renew Plaintiff's contract was upheld, and her employment with Defendants was terminated effective July 31, 2019.

50. The non-renewal of Plaintiff's contract was unlawful retaliation against her for engaging in protected activity when she complained about discriminatory treatment towards students and herself based on race.

7

51. The employment contracts of similarly-situated white employees, with comparable and performance, contracts which were renewed.

52. Plaintiff received disparate treatment in a material condition of her employment, which was non-renewal of her contract, based on her race as an African-American.

53. As a direct and proximate result of Defendants' discriminatory act of contract non-renewal based on race, Plaintiff suffered and continues to suffer economic damages in the form of lost salary and fringe benefits, even though she has made reasonably diligent efforts to secure comparable employment.

54. As a direct and proximate result of Defendants' discriminatory non-renewal of Plaintiff's contract, she suffered and continues to suffer emotional distress, humiliation, frustration, and related pain.

55. By non-renewing Plaintiff's employment contract, Defendants acted with conscious disregard toward her right to remain free from discrimination, even though its conduct had a great probability of causing him economic and emotional hardship, and did cause her such harm.

## V. Claims for Relief

### Count I: Discrimination in Violation of the Reconstruction Civil Rights Act, 42 U.S.C. §1981.

56. Paragraphs 1 through 55 are incorporated by reference herein.

57. By terminating and failing to renew Plaintiff's employment contract based on her race, and in retaliation for her engaging in the protected action of complaining about race discrimination, Defendants violated the Reconstruction Civil Rights Act of 42 U.S.C. §1981.

## VI. Prayer for Relief

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. declaration that Defendants violated the Reconstruction Civil Rights Act, 42 U.S.C. §1981;

B. wages, salary, employment benefits, and other compensation denied or lost to her, exceeding $75,000, because of Defendants' violation;

C. compensatory damages exceeding $25,000.00 and punitive damages in an amount exceeding $25,000.00;

D. prejudgment and post-judgment interest:

E. costs; and,

F. such other relief as the Court deems fair and equitable.

Respectfully submitted,
By: _____
Monique A. Cobbs
Pro Se Litigant

**JURY DEMAND**

Plaintiff hereby demands a jury of eight (8) persons.

By: _____
Monique A. Cobbs
Pro Se Litigant